UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLUE CASTLE (CAYMAN) LTD.,
       Plaintiff,

   -v-

GARNETT MILLER, *et al.*,
       Defendants.

23-CV-4133 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

  Plaintiff Blue Castle (Cayman) Ltd. ("Blue Castle") brings this action against Defendants Garnett Miller, Kenneth L. Floyd Jr., the New York City Environmental Control Board ("ECB"), the New York City Transit Adjudication Bureau ("TAB"), the City of New York Department of Transportation ("DOT"), the Criminal Court of New York City ("CC"),[1] and any Jane and John Does having an interest in the property at issue.  Blue Castle seeks to foreclose on a mortgage encumbering a property located at 3340 Fish Avenue, Bronx, New York 10469.

  Before the Court are Blue Castle's motion for summary judgment against Miller and Blue Castle's motion for default judgment against the remaining named defendants.  For the reasons that follow, both motions are granted.

**I. Background**

  **A. Factual Background**

  The Court assumes familiarity with the factual background of this case, as set forth in the Court's January 19, 2024 Opinion and Order denying Miller's motion to dismiss.  (*See* ECF No. 31.)  The facts recounted below are drawn from Blue Castle's Local Rule 56.1 Statement (ECF

---

[1] The Court refers to the ECB, the TAB, the DOT and the CC collectively as the "City Defendants."

No. 41-1 ("BC SOMF")) and Miller's counterstatement (ECF No. 68-1 ("Miller SOMF")), and any factual disputes are noted.[2]

On or about November 20, 2006, Miller obtained a mortgage loan of $569,800 from American Dream Mortgage Brokers, Inc., to finance the acquisition of a property located at 3340 Fish Avenue, Bronx, New York 10469. (BC SOMF ¶¶ 1-2; ECF No. 1-3 at 1.) Miller also executed a corresponding note. (*Id.* ¶ 1.) The mortgage was recorded in the Office of the City Register, Bronx County, on January 18, 2007. (*Id.* ¶ 2.) Blue Castle is the current owner of the mortgage and note.[3] (*Id.* ¶ 5.)

Miller first defaulted on his mortgage payments on April 1, 2012, and he has failed to make any subsequent payments. (*Id.* ¶ 6.) Because of this, Blue Castle "elects to accelerate the entire principal balance of $531,203 to be due immediately," as well as other corresponding attorney's fees and costs "authorized by the Note and mortgage." (*Id.* ¶ 7.)

On February 6, 2023, Blue Castle mailed Miller a thirty-day notice, as required by the contractual terms of the note and mortgage, notifying him that it intended to accelerate the loan if his default was not remedied. (*Id.* ¶ 8.) The same day, Blue Castle also sent Miller a ninety-day notice, as required by state law, advising him of "possible legal action" if his default was not

---

[2] Miller's counterstatement does not address many of Blue Castle's factual assertions, but instead repeatedly challenges the authenticity of Blue Castle's documents and questions the personal knowledge of those who have submitted affidavits. "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." *Johnson v. City of New York*, No. 15-CV-6915, 2019 WL 294796, at *10 n.8 (S.D.N.Y. Jan. 23, 2019) (quotation marks omitted).

[3] In addition to questioning the adequacy of the documentation indicating Blue Castle's current ownership of the mortgage and note, Miller states that even if Blue Castle has adequately shown its assignment of the mortgage, it has not shown its ownership of the note. (Miller SOMF ¶¶ 4-5.) However, Blue Castle did attach a copy of the note to its complaint (*see* ECF No. 1-3), and the final allonge states that Blue Castle is the current owner.

cured. (*Id.* ¶ 9.)

### B. Procedural History

Blue Castle commenced this case on May 18, 2023. (ECF No. 1 ("Compl.").) After the Court denied Miller's motion to dismiss on January 19, 2024 (ECF No. 31), Miller answered on February 2, 2024 (ECF No. 32 ("Answer")).

Blue Castle subsequently moved for summary judgment on July 5, 2024. (ECF No. 41.) While Miller initially did not oppose the motion, on January 22, 2025, the Court prompted him to respond. (ECF No. 65.) Miller opposed Blue Castle's motion on February 5, 2025 (ECF No. 68 ("Opp.")); and Blue Castle replied in further support of its motion on February 12, 2025 (ECF No. 70 ("Reply")).

Blue Castle obtained Clerk's certificates of default as to Floyd and the City Defendants on November 19, 2024. (ECF No. 52.) Blue Castle first moved for default judgment against Floyd and the City Defendants on December 16, 2024. (ECF No. 58.) Due to an issue with service of the motion on Floyd, the DOT, and the CC, the Court permitted Blue Castle to refile its motion on January 14, 2025. (*See* ECF No. 63.)

Blue Castle served the motion for a default judgment on Floyd and the City Defendants via first-class mail on January 15, 2025. (ECF No. 72 at 1, 3.)

## II. Legal Standards

### A. Motion for Summary Judgment

A court must grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is only appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, a court "must resolve all ambiguities and draw all inferences in favor [of] the nonmoving party." *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 515 (2d Cir. 2023).

In moving for summary judgment, "[t]he moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If the moving party satisfies its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). But the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts[;]" rather, it "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus.*, 475 U.S. at 586-87 (quotation marks omitted). Further, "[t]he mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (cleaned up) (quoting *Anderson*, 477 U.S. at 252).

**B.     Motion for Default Judgment**

A party "against whom a judgment for affirmative relief is sought" is in default when it "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). As a "default is an admission of all well-pleaded allegations against the defaulting party . . . a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014) (quotation marks omitted). Nonetheless, a district court must "determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Id.* (quoting

4

*Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). "[A] default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability." *Id.* (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).

### III.   Discussion

#### A.   Motion for Summary Judgment

Blue Castle moves for summary judgment, arguing that it has established an adequate *prima facie* case entitling it to judgment of foreclosure. Miller opposes the motion, arguing that Blue Castle lacks standing, that it has failed establish a *prima facie* case, and that it failed to issue and document mandatory notices of default and foreclosure.[4]

##### 1.   Standing

As a threshold jurisdictional issue, the Court first addresses Miller's contention that "triable issues of material fact with respect to . . . Plaintiff's purported standing to foreclosure" remain.[5] (Opp. at 3.)

"Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure

---

[4] In his Answer, Miller asserts an additional ten affirmative defenses beyond these arguments. (*See* Answer at 5-6.) However, because Miller does not re-argue, or even mention, these defenses in his opposition to Blue Castle's motion for summary judgment (*see* Opp.), the Court deems these defenses abandoned. *Cf. Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 & n.54 (2d Cir. 2016) ("[A] partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims." (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014))).

[5] Miller does not appear to challenge federal constitutional standing, but rather the separate requirements for standing in foreclosure actions governed by state law. (*See* Opp. at 3 (citing *Courchevel 1850 LLC v. Alam*, 464 F. Supp. 3d 475, 481 (E.D.N.Y. 2020) (discussing state law standing)).) Because the state standing requirements amount to additional substantive elements for a foreclosure cause of action, they apply in federal court. *See Windward Bora, LLC v. Weiss*, 717 F. Supp. 3d 247, 261 & n.7 (E.D.N.Y. 2024) (describing state law standing in foreclosure actions as a "substantive" issue and thus applicable in federal courts).

5

action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 545 (2d Dep't 2015)). "Once a note is transferred, the mortgage passes as an incident to the note." *Gustavia Home, LLC v. Owusu*, No. 16-CV-5709, 2018 WL 2122818, at *5 (S.D.N.Y. May 8, 2018) (cleaned up).

Blue Castle has attached a copy of the note to its complaint, which includes an allonge assigning the note to Blue Castle. (ECF No. 1-3 ("Note") at 7.) Blue Castle has also attached the City Register's mortgage assignment history showing assignment to Blue Castle on May 10, 2022. (ECF No. 1-5 at 22.) Finally, Blue Castle has submitted an affidavit by John Ramer, the company's "authorized representative," stating that both the note and the mortgage "were ultimately assigned to Plaintiff as evidenced by the allonges to the note and assignments of mortgage." (ECF No. 41-2 ("Ramer Aff.") ¶ 10; *see also* ECF No. 41-13 (authorizing and appointing John Ramer to manage Blue Castle's debt assets, signed November 23, 2022).)

Miller challenges the adequacy of the note Blue Castle attaches, stating that the note has not been authenticated, and is thus inadmissible evidence, and, alternatively, that the note allonges are insufficient because there is no "proof[] that the allonges were firmly affixed to the note prior to the commencement of the action." (Opp. at 3.)

As for the authenticity of the note, Blue Castle has also attached the Ramer affidavit, attesting to his personal knowledge of the authenticity of the attached note. (Ramer Aff.) Because the note is a Blue Castle business record, and Ramer is an authorized representative who "[i]n the regular performance of [his] job functions" is "familiar" with such records (*see id.*), such testimony properly authenticates the note. Fed. R. Civ. Evid. 901(b)(1); *see also Wells Fargo Bank, Nat'l Ass'n as Tr. for Benefit of Holders of CD 2018-CD7, Mortg. Tr. Com. Mortg.*

*Pass-Through Certificates, Series 2018-CD7 v. Prince 26, LLC*, No. 22-CV-5586, 2023 WL 5152420, at *6 (S.D.N.Y. Aug. 10, 2023) (holding that the affidavit of a company's asset manager attesting to the authenticity of loan documents was sufficient to establish authenticity).[6]

As for the allonges, the New York Uniform Commercial Code requires that an "allonge must take the form of 'a paper so firmly affixed [to the note] as to become a part thereof.'" *Courchevel 1850 LLC v. Alam*, 464 F. Supp. 3d 475, 481 (E.D.N.Y. 2020) (quoting N.Y. U.C.C. § 3-202(2)). Blue Castle has met its burden here. The note Blue Castle has attached to its complaint includes the full history of the note's assignment to four subsequent entities, all in a single document and without any gap in assignment. (*See* Note at 3-7.) Each new assignment contains a wet-ink signature of the previous assignee, transferring its interest to the new party. (*Id.*) The final allonge assigns the $569,800 note to "Blue Castle (Cayman) Ltd" by the previous owners of the note, RCG Note Partners LLC. (*Id.* at 6, 7 (capitalization altered).) The top of Blue Castle's allonge reads: "This note allonge is to be attached to and made part of the note, for the purpose of noteholder endorsements to evidence transfer of interest." (*Id.* at 7 (capitalization altered).) The entirety of this context indicates that Blue Castle's allonge was properly "affixed" to the note. Miller, meanwhile, does not provide any evidence that the allonge was not properly affixed. This may be because Miller allegedly "failed to serve any discovery demands" on Blue

---

[6] Miller asks the Court to follow the First Department's "evidentiary rule," which he alleges sets a higher standard for "personal knowledge" than what Ramer has testified to here. (Opp. at 4.) However, federal district courts must follow the Federal Rules of Evidence, so any First Department cases Miller cites are immaterial on this point. "[I]t has been clear, at least since *Hanna v. Plumer*, that '[w]hen a situation is covered by one of the Federal Rules, . . . the court has been instructed to apply the Federal Rule.'" *Sarkees v. E. I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021) (quoting 380 U.S. 460, 471 (1965))). Further, "[b]ecause the Evidence Rules were enacted directly by Congress, their validity vis-à-vis state law . . . stands on ground even firmer than that of the Federal Rules of Civil Procedure." *Id.* (quoting 19 Charles A. Wright & Arthur R. Miller et al., Federal Practice and Procedure, § 4512 (3d ed. 2021)).

Castle, and thus never asked to "inspect the original note." (Reply at 6.) He has thus failed to identify any genuine issue of material fact that remains over the adequacy of Blue Castle's note and attached allonges.

Even if Blue Castle failed to show that the allonge was properly affixed to the note, it has also produced adequate evidence that it had physical possession of the note at the time the action as commenced. "Notably, '[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.'" *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (summary order) (quoting *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (2d Dep't 2009)); *see also Blue Castle (Cayman) LTD v. 1767 TP Ave LLC*, No. 22-CV-9577, 2024 WL 4135194, at *4 (S.D.N.Y. Sept. 10, 2024) (holding that attachment of a note to a party's complaint was sufficient to show possession of the note and thus establish standing). Blue Castle attached the note to its complaint on the same day it filed suit. (*See* Note.) And Ramer, in his affidavit, states that "Plaintiff is the current owner of the Note by virtue of its physical possession of the wet-ink Note." (Ramer Aff. ¶ 11.) *See OneWest Bank*, 827 F.3d at 223 ("New York courts have repeatedly held that proof of physical possession—such as the affidavits of [plaintiff's] corporate representative and counsel in this case—is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note." (collecting cases))

Blue Castle has thus adequately established standing to foreclose in the present case.

### 2. Foreclosure

"A plaintiff mortgagee in a foreclosure action establishes a *prima facie* case [entitling it to foreclosure] by presenting a note, a mortgage, and proof of default." *Mae v. Quickway Ests. LLC*, No. 22-CV-3048, 2023 WL 6162927, at *7 (S.D.N.Y. Sept. 21, 2023) (quotation marks

omitted); *see also Gustavia Home, LLC v. Rutty*, 720 F. App'x 27, 28 (2d Cir. 2017) (summary order) (enumerating the same *prima facie* case requirements). "Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note." *U.S. Bank, N.A. v. Squadron VCD, LLC*, No. 10-CV-5484, 2011 WL 4582484, at *4 (S.D.N.Y. Oct. 3, 2011), *aff'd*, 504 F. App'x 30 (2d Cir. 2012) (summary order).

As discussed above, Blue Castle attached the requisite note and mortgage to its original complaint. (*See* Note; ECF No. 1-4.) In addition to challenging the authenticity of the note, which the Court deems authentic and admissible in light of the Ramer affidavit, *see supra* Section III.A.1., Miller contends that Blue Castle's purported showing of default is inauthentic and inadmissible (Opp. at 3-4).

Blue Castle has proffered two pieces of evidence to show Miller's default. First, Ramer states in his affidavit that "Miller defaulted under the terms of the Note and Mortgage for failure to make payments when due on April 1, 2012." (Ramer Aff. ¶ 12.) Second, Blue Castle attached an accounting sheet from its loan servicer indicating that the last payment Miler made was on March 1, 2012, and detailing his hundreds of missed payments since then. (*See* ECF No. 41-9.)

For the same reason Ramer could authenticate the note, his affidavit also provides sufficient proof of Miller's default. Ramer, as the authorized representative of Blue Castle with adequate familiarity of its business records and business practices, attested to the date of Miller's default—April 1, 2012—and confirmed that "[n]o payments have been made" since that time. (Ramer Aff. ¶ 17.) Ramer's affidavit is sufficient on its own to prove default. *See CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 195 (S.D.N.Y. 2018) (holding that an attorney's

affidavit "attesting to Defendant's failure to timely make payments due under the Loan" was sufficient proof of default). However, even if it were not, the payment history document created by Blue Castle's loan servicer (*see* ECF No. 41-9) would also be admissible as much as it has been "incorporated into the business records of the testifying entity." *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992). Further, the Court is persuaded by Judge Engelmayer's holding that a loan history document produced by a plaintiff's loan servicer is generally the kind of document that, like the toll receipt in *United States v. Jakobetz*, is "not 'the type of evidence that is so susceptible to fabrication that authentication by a representative of [the entity creating the documents] should be required.'" *Wells Fargo Bank*, 2023 WL 5152420, at *7 (quoting *Jakobetz*, 955 F.2d at 801).

Ultimately, Miller does not allege that he continued making payments after March 1, 2012—thirteen years ago—nor does he identify any evidence whatsoever to suggest that any of the documents Blue Castle has attached are inauthentic or otherwise inadmissible. Because Blue Castle has met its *prima facie* burden of producing the mortgage, note, and proof of default, and Miller has identified no evidence suggesting the inauthenticity or inadmissibility of any of these documents, there is no genuine dispute of material fact and Blue Castle is entitled to summary judgment on its foreclosure claim.

      **3.**    **Notices and RPAPL**

Miller raises three affirmative defenses in his opposition to Blue Castle's motion for summary judgment: (1) Blue Castle failed to provide proper notice of default as required by the terms of the mortgage; (2) Blue Castle failed to provide a notice ninety days before foreclosure as required by state law; and (3) Blue Castle failed to officially document the mailings under state law. (Opp. at 5-6.)

      **a.**    **Mortgage Notice**

Miller's mortgage states that his lender must provide notice via a physical delivery "or by mailing it first class mail"; and the lender must then give Miller "at least 30 days from the date on which the notice is given" to correct his default before pursuing foreclosure and sale. (ECF No. 1-4 at 8-9.) Further, the lender must advise Miller of his right to assert defenses against it in court. (*Id.* at 9.)

Blue Castle has attached to its motion for summary judgment the default notice its attorney sent to Miller on February 6, 2023. (ECF No. 41-10.) The letter, which has an attached envelope marked "USPS First-Class Mail," states: "On or before March 10, 2023, you must submit payment by bank check, money order, or certified funds of the total arrears." (*Id.* at 1, 3 (capitalization altered).) The notice explained that if Miller failed to correct his default by March 10, 2023, he would "be in default and Creditor may require immediate payment in full, and Creditor or another person may acquire the Property by means of foreclosure and sale." (*Id.* at 3.) Further, the notice uses nearly identical language to his mortgage to inform him of his rights in court prior to the foreclosure sale. (*See id.*) Blue Castle has satisfied its obligations under the terms of the mortgage: its attorney mailed Miller the notice by first-class mail, it gave him over thirty days to correct his default, and it provided further information about how Miller could assert defenses in court.

Miller, meanwhile, beyond stating that there remain triable issues of fact surrounding the notice (Opp. at 6), provides no "evidentiary support to cast doubt on whether the notices of default were sent, and there is no evidence in the record suggesting that notice of default was not provided." *Gustavia Home*, 362 F. Supp. 3d at 80 (quotation marks omitted). Miller's first affirmative defense thus fails.

      **b.**   **RPAPL Sections 1304 and 1306**

11

Two state laws also govern Blue Castle's notices to Miller. First, New York state property law requires a foreclosing party to provide a specific notice document, via first-class or certified mail, "at least ninety days" before any legal action commenced. N.Y. Real Prop. Acts. & Proc. L. ("RPAPL") § 1304(1). Attached to this document, the foreclosing party must include a list of "approved housing counseling agencies" in the borrower's area "which provide free counseling." *Id.*

Second, the state law mandates that "[e]ach lender, assignee or mortgage loan servicer shall file with the superintendent of financial services . . . within three business days of the mailing of the notice required by [RPAPL Section 1304]." RPAPL § 1306(1). And that filing must include "the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage, and such other information as will enable the superintendent to ascertain the type of loan at issue." *Id.* § 1306(2).

Blue Castle attached to its motion for summary judgment a copy of the RPAPL Section 1304(1) notice it sent to Miller on February 6, 2023. (ECF No. 41-11.) That notice was sent by first-class mail (*see id.* at 1); and it includes the exact wording required by the statute, in seven languages including English, as well as a list of organizations Miller could reach out to for counseling help. (*Id.* at 2-4.) Because this action was not commenced until May 18, 2023, 101 days after the notice was mailed to Miller, Blue Castle met the ninety-day statutory requirement.

Blue Castle also attached an RPAPL Section 1306 filing by its loan servicer, FCI Lender Services, Inc. ("FCI"), dated February 8, 2023. (*See* ECF No. 41-12.) This filing was thus within three business days of the mailing of the Section 1304 notice, as required by Section 1306(1).

Miller challenges both the authenticity of the documents and the fact that the Section

1306 filing was made by Blue Castle's loan servicer rather than Blue Castle. The Section 1304 filing is authenticated by the Ramer affidavit, in which Ramer states that "[o]n February 6, 2023, Plaintiff complied with the requirements of RPAPL § 1304 by mailing a 90-Day Notice (the "90-Day Notice") to Miller advising of possible legal action if the default under the Note and Mortgage together was not cured.".[7] (Ramer Aff. ¶ 14.) The Section 1306 filing is also authenticated by the Ramer affidavit attesting to its authenticity. (*Id.*) Further, like the loan servicer payment history discussed above, a copy of the governmental filing documenting this notice is "not 'the type of evidence that is so susceptible to fabrication that authentication by a representative of [the entity creating the documents] should be required.'" *Cf. Wells Fargo Bank*, 2023 WL 5152420, at *7 (quoting *Jakobetz*, 955 F.2d at 801).

As for Miller's objections that Blue Castle's loan servicer, FCI, filed the Section 1306 document instead of Blue Castle, the statute itself permits the "lender, assignee or mortgage loan servicer" to file the required documentation. *See* RPAPL § 1306(1). And though Miller argues that "there is no evidence of [FCI's] relationship to the Plaintiff or any of its purported predecessors in interest" (Opp. at 6), he has presented no evidence suggesting that FCI is not Blue Castle's loan servicer. Further, Miller is familiar with FCI because he was notified by his last loan servicer in May 2022 that FCI "will be collecting [his] mortgage loan payments" going forward. (ECF No. 70-3 at 1.) Miller was also receiving outstanding payment notices from FCI detailing granular data about his mortgage. (*See* ECF No. 70-4.) Miller's argument would

---

[7] Miller argues in his opposition that because Blue Castle's attorney has misnumbered several of the attached exhibits, there is a triable issue of fact over the existence and authenticity of the documents. (Opp. at 4.) While the Court would certainly prefer if counsel properly numbered their exhibits, Blue Castle's counsel did label each exhibit on the docket clearly enough such that identification is not difficult. Ultimately, while a creative argument, the misnumbering does not create any genuine disputes of material fact.

require that FCI be an unrelated third party that just so happened to know intimate details about Miller's mortgage and was somehow, coincidentally working in tandem with Blue Castle since May 2022. Such a chain of inferences is too outlandish for any rational trier of fact to believe.

Because Blue Castle has produced sufficient evidence to establish beyond genuine dispute that it abided by the terms of the mortgage and the mandates of state property law, and because Miller has failed to identify any evidence suggesting otherwise, his affirmative defenses fail.

### B.      Motion for Default Judgment

Blue Castle moves for default judgment against Floyd and the City Defendants, all of which, Blue Castle asserts, have "or may claim to have" some kind of subordinate interest in the property at issue, and are thus necessary parties to this action. (Compl. ¶¶ 4-10; ECF No. 63-1 at ¶¶ 5-13.) Blue Castle must bring suit against all parties with an interest in the property because "[t]he absence of a necessary party in a foreclosure action leaves that party's rights unaffected by the judgment and sale, and the foreclosure sale may be considered void as to the omitted party." *McWhite v. I & I Realty Grp., LLC*, 179 N.Y.S.3d 302, 305 (2d Dep't 2022). "When a default judgment is entered against a defendant with a 'nominal interest' in a property, any such interest in the relevant property is terminated." *Windward Bora LLC v. Baez*, No. 19-CV-5698, 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020).

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a "two-step process" including (1) "the entry of a default" and (2) "the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quotation marks omitted). Blue Castle has successfully obtained certificates of default from the Clerk of Court against Floyd and the City Defendants. (*See* ECF No. 62.) Thus, the Court's inquiry is whether defendants received adequate "notice and an opportunity to be heard" and whether "plaintiff's

14

allegations establish the defendant's liability as a matter of law," thus satisfying the requirements for the entry of a default judgment. *Mickalis Pawn Shop, LLC*, 645 F.3d at 132, 137 (cleaned up).

### 1. Kenneth L. Floyd, Jr.

Blue Castle has properly given Floyd notice of the current action and of its motion for default judgment against him. Floyd was initially served on July 22, 2023. (*See* ECF No. 63-3 at 5.) Floyd appeared in the action on August 21, 2023, by filing a document entitled "Reply Summons And Complaint," which appears to be an attempt to answer the complaint.[8] (*See* ECF No. 15 (capitalization altered).) However, he has failed to file anything since then. Floyd was also properly served with Blue Castle's motion for default judgment and its supporting papers on January 15, 2025. (ECF No. 72 at 1, 3.) However, he has not opposed the motion.

Blue Castle has also met its burden of showing Floyd's interest in the property at 3340 Fish Avenue, Bronx, New York 10469. Blue Castle alleges that Floyd, in his capacity as the trustee of the "Safe House FP Trust," is the current "record owner" of the property at issue in this action, thus clearly having an interest in the property. (ECF No. 63-1 at ¶ 5 (capitalization altered).)

The Court concludes that based on the well-pleaded allegations in Blue Castle's Complaint, Floyd's liability has been established as a matter of law and Blue Castle's motion for default judgment against him is granted.

---

[8] Because Floyd is named as a trustee to the Safe House FP Trust (*see* Compl.), and trustees may not represent a trust *pro se*, *Nasledie Davudova Express Tr. v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 24-CV-7633, 2024 WL 4769687, at*2 (S.D.N.Y. Nov. 13, 2024) (collecting cases), his *pro se* filing was invalid.

### 2.   City Defendants

Blue Castle has also properly established that it provided the City Defendants notice of the action and the motion for default judgment against them. Blue Castle properly served the complaint on the DOT and ECB on July 20, 2023 (*See* ECF No. 63-3 at 1, 7); the TAB on July 24, 2023 (*id.* at 10); and the CC on July 26, 2023 (*id.* at 2). Blue Castle also properly served the City Defendants with its motion for default on January 15, 2025. (*See* ECF No. 72 at 1-3.) The DOT appeared through counsel in the case on September 14, 2023. (ECF No. 23.) And the ECB appeared in the same way on September 15, 2023. (ECF No. 24.) However, none of the City Defendants answered Blue Castle's complaint, opposed the motion for default judgment against them, or filed any other papers in this action.

In determining whether to grant a default judgment in a mortgage foreclosure case, "[c]ourts apply a heightened pleading requirement [under New York law] where a state or city agency is named as a defendant."[9] *Windward Bora LLC*, 2020 WL 4261130, at *3 (quotation marks omitted). New York property law states that if a city agency is a named defendant, a plaintiff must provide "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making the state a party defendant." RPAPL § 202-a(1). "Bare allegations that defendants are lienholders cannot demonstrate nominal liability, but allegations supported by documentary evidence reflecting the interest or lien will suffice." *CIT*

---

[9] Blue Castle does not allege that the heightened pleading requirement set by New York statute is inapplicable in federal court under the doctrine of *Erie* and its progeny. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399-404 (2010). Because Blue Castle has exceeded even the heightened pleading standard, the Court need not, and does not, address whether RPAPL Section 202-a conflicts with a federal law, *Shady Grove*, 559 U.S. at 399, or is sufficiently substantive such that it would still apply in federal court, *id.* at 416-17 (Stevens, J., concurring in part and concurring in the judgment).

*Bank, N.A. v. Neris*, No. 18-CV-1511, 2019 WL 6334894, at *3 (S.D.N.Y. Nov. 1, 2019).

Blue Castle has attached accounting sheets of the outstanding liens against Floyd and the Safe House Trust, encumbering the property at issue because of Floyd's status as the current record-holder. According to the lien databases Blue Castle has used to research Floyd, the ECB has eighteen liens against "SAFEHOUSE FP TRUST" totaling $257,900 (ECF No. 1-2; ECF No. 63-6); the TAB has four liens against Floyd totaling $751.66 (ECF No. 63-7); the DOT has two liens against Floyd totaling $495 (ECF No. 63-8); and the CC has four judgment liens against Floyd totaling $1,028 (ECF No. 63-8). Blue Castle has thus adequately alleged the City agencies' interests in the property at issue in this case. *See CIT Bank, N.A.*, 2019 WL 6334894, at *3 (holding that similar accounting sheets attached to a motion for default judgment were adequate documentation to satisfy Section 202-a); *Windward Bora*, 2020 WL 4261130, at *3 ("Title-search documents showing amounts owed to city agencies are sufficient to meet a plaintiff's obligations under RPAPL Section 202-a(1)." (cleaned up)).

Because Blue Castle has provided adequate notice to all parties and sufficient documentation of their interests in the property at issue, the Court grants the motion for default judgment with respect to Floyd and the City Defendants.

## IV.   Conclusion

For the foregoing reasons, Plaintiff's motions for summary judgment and default judgment are GRANTED.

The Clerk of Court is directed to terminate the motions at Docket Numbers 41, 58, and 63; to enter judgment of foreclosure and in favor of Plaintiff; and to close this case.

SO ORDERED.

Dated: March 14, 2025

J. PAUL OETKEN
United States District Judge